UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CT-3183-BO

| | | |
|---|---|---|
| JAMES EDWARD COOMBS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| NURSE LEWIS, et al., | ) | |
| Defendants. | ) | |

On August 1, 2013, plaintiff James Edward Coombs, a pre-trial detainee, filed this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deliberate indifference to a serious medical need while housed at Cumberland County Detention Center ("CCDC"). Presently, there are two motions before the court. Defendant nurses named as Geddie, Anthony, and Lewis seek a motion to dismiss.[1] Mot. to Dismiss [D.E. 22]. Defendant detention officers Fuller and Ivey seek summary judgment. Mot. for Summ. J. [D.E. 27]. The court gave plaintiff notice of the motions. Rule 12 letter [D.E. 25]; Roseboro letter [D.E.30]. No response to either motion has been filed by plaintiff. See Docket. Plaintiff does have a pending motion for appointment of counsel. Mot. for Appt . of Counsel [D.E. 32]. In this posture, the motions are ripe for determination.

Factual Discussion

On June 14, 2013, Coombs, was arrested and placed into CCDC. At booking, Coombs was uncooperative and so heavily intoxicated that he was unable to complete the booking process. Mem. in Supp. Mot. for Summ. J. [D.E. 28] Ex. A, Aff. Trotter at ¶ 11. Coombs was

---

[1] Defendant nurses refer respectively to Lynetta Allen-Geddie, Anthony Vallaruel, and Charlotte Lewis. Mot. to Dismiss [D.E. 22] p. 1. Lewis and Vallaruel were on duty on June 29, 2013, the date plaintiff alleges he was denied medical treatment. Compl. [D.E. 1-2]. Geddie was not on duty at that time, but she investigated and responded to plaintiff's grievance. Id.

placed in an observation cell until the booking, screening, and assignment process could be concluded on June 17, 2013. Id. ¶ 12. Coombs has a significant history of detention at the CCDC. Id. During those previous stays, he has often been disobedient, exhibiting conduct such as damaging sprinkler heads and assaulting other inmates. Id. ¶ 2. At processing, Coombs informed the screening officer, Detention Officer McNair, that he (Coombs) wanted to remain in the booking or initial housing area, and if not he wanted to be placed in special management. Id. ¶ 13. McNair believed Coombs might cause an altercation or disruption in the pod if he were not placed in administrative segregation, and the detention officers assigned Coombs to "SMB 121." Id. ¶ 14. Just as in the past, Coombs then began submitting sick call slips. Id. ¶ 15. Many of the sick call requests involved requests for Metamucil and other dietary matters, but the medical staff was notified and responded to them, including his complaint in June 2013 of chest pain. Id. ¶ 16.

The CCDC is a large modern detention facility. Id. ¶ 2. In addition to medical examination rooms located adjacent to each housing pod or unit, the facility provides a full medical clinic, staffed 24 hours per day, 7 days per week, and operated, not by the Cumberland County Sheriff's Office or the Sheriff's detention officers, but by employees of the Cumberland County Health Department independently. Id. ¶ 17. The operating procedures of both the Detention Center and the medical clinic through the Health Department, provide for the maintenance of a secure depository for inmate sick call slips which are confidential and enable the inmates to provide personal, protected health information directly to the medical staff members who collect, review, and respond to the medical sick call slips. Id. ¶ 18. However, the policies of the detention center require medical screening questions to be asked of all inmates, and observation of the inmates for a determination as to any visible injuries, deformities or

2

Case 5:13-ct-03183-BO   Document 34   Filed 08/21/14   Page 2 of 9

abnormalities which a detention officer may be able to observe. Id. While detention officers do not operate the medical clinic and do not provide medical services, they are trained to ask detainees whether the inmate has any health issue or condition diagnosed by a physician as requiring treatment and to look for and to respond to health conditions that as a lay person he or she could recognize as necessitating medical attention. Id. ¶ 20.

On June 29, 2013, Coombs reported to defendant Corporal Fuller that he (Coombs) was experiencing chest pains. Id. ¶ 21. Coombs asked to be seen by the medical staff for evaluation. Id. Because of the nature of Coombs' claimed symptoms, Fuller called the internal medical clinic at the Detention Center and requested a member of the medical staff to come to the special management section where Coombs was housed to evaluate him. Id. ¶ 22. When informed that Coombs should complete a sick call slip, Fuller returned directly to Coombs' cell and informed him of the response and the need to complete a sick call slip. Id. ¶ 23. Fuller again checked on Coomb's who continued to complain of chest pains. Id. Because of the continued complaint, and not having seen medical staff in the housing unit, Fuller arranged for a substitute detention officer to serve as temporary replacement, and went directly to locate a member of the medical staff. Id. ¶ 24. Fuller found Nurse Lewis, and reported the situation a second time and asked for her or one of the R.N.s to come to the unit to see Coombs. Id. ¶ 25. Fuller then returned to the unit and continued to monitor Coombs closely until the end of his shift. Id. During that time, no emergency arose, but Fuller still continued close monitoring until his duty time ended. Id. ¶ 26. At that time, he notified his replacement of the circumstances and to expect a nurse to conduct an evaluation of Coombs. Id. ¶ 27.

3

Case 5:13-ct-03183-BO   Document 34   Filed 08/21/14   Page 3 of 9

Subsequently, Coombs filed a grievance. Id. ¶ 29. Lt. Ivey, who had not been present on June 29, 2013, inquired into the matter and found that Fuller had reported Coombs' complaints to the medical staff, and noted that information in the grievance form. Id. at Appendix at 000014 (noting that "medical was notified by B PLT"). The medical staff, through defendant supervisor Geddie responded to Coombs' claims that the medical staff had responded to Coombs' sick call slip, and that "[a]t the time of [his]. . . request it was determined that [his]. . . complaint was non-emergent by the nursing staff assigned." Id. Aff. Ivey at ¶ 6.

Coombs further contends that on one occasion he was assaulted, and that he was also not served his food on three separate occasions. Mot. for Injunc. Relief [D.E. 3 and 7]. Coombs asserts that he believes the guards' behavior was due to his requests for medical care. Id. Jail records to not reflect an assault to Coombs during this period of time. Id., Aff. Trotter ¶ 32-33. Coombs grievances show that he complained about the quantity of food and the absence of cheese arising from his lactose free dietary requirement. Id. ¶ 34 and Ex. A. Coombs was informed of that per policy the lactose free portion does not include cheese and that he and all other inmates were provided with the same quantities or servings of food. Id.

Legal Standard and Discussion

A. Deliberate Indifference

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Additionally, a section 1983 plaintiff must allege the personal involvement of a defendant. See,

4

e.g., Iqbal, 556 U.S. at 676; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

Courts evaluate confinement conditions of pretrial detainees under the due process clause of the Fourteenth Amendment, rather than under the Eighth Amendment. See, e.g., Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). As a practical matter, the analysis under the due process clause and the analysis under the Eighth Amendment is materially indistinguishable. See, e.g., Riley v. Dorton, 115 F.3d 1159, 1166–67 (4th Cir. 1997) (en banc), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010) (per curiam); Hill v. Nicodemus, 979 F.2d 987, 991–92 (4th Cir. 1992).

"Pretrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainee[s'] rights to due process when they are deliberately indifferent to serious medical needs." Nicodemus, 979 F.2d at 991 (quotation omitted). To prove such a claim, a plaintiff must demonstrate that the defendant "acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Deliberate indifference requires that an official actually know of and disregard an objectively serious condition, medical need, or risk of harm. See id. at 837; Iko, 535 F.3d at 241. Plaintiff must demonstrate that the care provided was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); Hicks v. James, 255 F. App'x 744, 749 (4th Cir. 2007) (per curiam) (unpublished). Only when an action meets both the objective and subjective elements will it offend the "evolving standards of decency" in such a way as to violate the constitutional

5

prohibition against "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104-106; Farmer v. Brennan, 511 U.S. 835-836 (1994). Disagreement with medical staff over the course of treatment is not sufficient to state an Eighth Amendment deliberate indifference claim. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1057–58 (9th Cir. 2004) (a prison official is deliberately indifferent only if he or she knows of and disregards an excessive risk to an inmate's health; neither a prisoner's difference of opinion concerning the course of treatment nor mere negligence in diagnosing or treating a medical condition amounts to deliberate indifference); De'Lonta v. Angelone, 330 F.3d 630, 635 (4th Cir. 2003); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). Mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. See Estelle, 429 U.S. at 105–06; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

B. Motion to Dismiss the Nurse Defendants

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 677-679 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement. See, e.g., Iqbal, 556 U.S. 678-679; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Similarly, a court need not

6

as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. 678-679. In addition to the complaint, the court may consider documents integral to and explicitly relied on in the complaint if the plaintiff does not challenge their authenticity. Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004). The court may also take judicial notice of matters of public record. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Plaintiff's allegations are nothing more than a disagreement with the nurses' assessment that Coombs was in a non-emergent situation.[2] Compl., Stmt. of Claim. This does not meet the standard of a § 1983 claim for medical indifference. Coombs has not alleged any physical harm resulting from the actions or inactions of the medical staff; he has not alleged any diagnosed medical condition from which he was suffering at the time of his complaints; and he has not alleged that his condition was serious or life threatening. The motion to dismiss is granted.

C.   Summary Judgment of Fuller and Ivey

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the

---

[2]For clarification, the court makes this decision based solely on the allegations within the complaint and these defendants' motion to dismiss. The nurses have not moved for summary judgment; thus, while the facts set out articulate summary judgment information, those facts did not impact the motion to dismiss. See Phillips v. Basu, 518 F. App'x 159 *1 (4th Cir. 2013). Clearly, however, the facts within the motion for summary judgment set out more clearly the events of the dates in question.

7

moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

The court has reviewed the motion in light of the governing standards and grants summary judgment to defendants Fuller and Ivey based on their affidavit, the complaint, the grievance reports, and evidence presented within their memorandum in support of their motion for summary judgment. Mem. in Supp. of Mot. for Summ. J., D.E. 27, Aff. and Ex. A-B, D.E. 29, Aff. It appears that the officers provided and sought medical care for Coombs during his period of detention at CCDC. They relied on medical staff in providing the care, the medical staff found the situation to be non-emergent, and nothing in the record suggests deliberate indifference on their part. Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) (detention officials are entitled to rely on the opinions, judgment and expertise of prison medical personnel in determining the course of treatment that is medically necessary and appropriate for a detainee); Miltier, 896 F.2d at 854 (same). The claims are dismissed.

As for any claim of retaliation, in order for a detainee to state a colorable claim of retaliation under 42 U.S.C. § 1983, the alleged retaliatory action must have been taken with regard to the exercise of some specific constitutionally protected right, or the retaliatory action

itself must violate such a right. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Courts generally should view claims of retaliation with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir.1994). Coombs has failed to allege or bring forward any proof of a specific right or any particular means by which retaliation allegedly occurred. Instead, even Coombs own allegations negate such a claim, acknowledging that Fuller acted in a manner to assist in Coombs' request for medical care, and Coombs makes no allegations that either Fuller or Ivey acted in any manner to retaliate against Coombs. The claim is dismissed.

In an abundance of caution, the court also finds that any claims not specifically addressed, such as the unsubstantiated assault, are nothing more than generalized and conclusory allegations without a basis in fact and meritless. White v. White, 886 F.2d 721, 724 (4th Cir. 1989) (pro se litigant complaints must be liberally construed; however, a minimum level of factual support is required); see also Adams, 40 F.3d at 74 (4th Cir. 1994).

Conclusion

Accordingly, both the motion to dismiss filed by defendant nurses [D.E. 22], and the motion for summary judgment filed defendant officers [D.E. 27] are GRANTED, and the case is DISMISSED. The motion for appointment of counsel is DENIED [D.E. 32]. The Clerk is DIRECTED to CLOSE the case.

SO ORDERED, this the 20 day of August 2014.

TERRENCE W. BOYLE
United States District Judge

9

Case 5:13-ct-03183-BO   Document 34   Filed 08/21/14   Page 9 of 9